**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Patricia Solorio,<br><br>           Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>           Defendant. | No. CV-21-00582-PHX-DLR<br><br>**ORDER** |

Plaintiff challenges the denial of her applications for disability insurance and supplemental security income benefits under Titles II and XVI of the Social Security Act ("the Act") by Defendant, the Commissioner of the Social Security Administration ("Commissioner" or "Defendant"). Plaintiff filed a Complaint seeking judicial review of that denial (Doc. 1) and this Court now addresses Plaintiff's Opening Brief (Doc. 17, Pl. Br.), Defendant's Answering Brief (Doc. 18, Def. Br.), and Plaintiff's Reply (Doc. 22, Reply). Having reviewed the briefs and Administrative Record (Doc. 16, AR.), the Court now reverses the Administrative Law Judge's ("ALJ") unfavorable decision and remands for further proceedings consistent with this opinion.

**I.    THE SEQUENTIAL EVALUATION PROCESS AND JUDICIAL REVIEW**

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. *E.g.*, 20 C.F.R. § 404.1520(a)(4).[1] The claimant bears the

---
[1] Parallel regulations applicable to each disability program are found at 20 C.F.R. 404.1501-1599 *et seq.* (disability insurance benefits or "DIB") and 416.901-999 *et seq.* (supplemental security income or "SSI"). For the purposes of brevity, the Court will cite only to the DIB regulations.

burden of proof at the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial, gainful work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the Plaintiff is engaged in substantial, gainful work activity, she is not disabled. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the Plaintiff does not, she is not disabled. *Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or is medically equivalent to an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the analysis proceeds to step four, where the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can perform her past relevant work, she is not disabled. *Id*. If she cannot, the analysis proceeds to the fifth and final step, where the ALJ determines if the claimant can perform any other work in the national economy based on her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant cannot, she is disabled. *Id.*

This Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (cleaned up). In determining whether substantial evidence supports a decision, the court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quotations and citations omitted). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

## II. PROCEDURAL HISTORY

Plaintiff filed concurrent applications for benefits in November 2018. (AR. at 266-85.) The Commissioner denied Plaintiff's claims at the initial and reconsideration levels of administrative review (AR. at 132-39, 145-51), and Plaintiff timely requested a hearing (AR. at 152-53). ALJ Peter J. Valentino conducted a telephonic hearing on April 21, 2020. (AR. at 41-69.) At that hearing, Plaintiff, medical expert Alvin Stein, and vocational expert ("VE") Connie Guillory testified. On August 5, 2020, the ALJ issued an unfavorable decision. (AR. at 22-38.) The Social Security Appeals Council denied Plaintiff's request for review on February 5, 2021 (AR. at 1-4), and Plaintiff filed this civil action on April 6, 2021. (Doc. 1.)

## III. DISCUSSION

Plaintiff presents two issues for consideration: (1) whether the ALJ erred by failing to resolve a conflict in the vocational evidence, and (2) whether Plaintiff's unfavorable decision is constitutionally defective because the Act provides that the Commissioner can only be removed for cause in violation of the separation of powers. (Pl. Br. at 1.) This Court finds the ALJ erred by failing to seek an explanation from the VE regarding a potential conflict in the vocational evidence. The Court remands for further proceedings.

**(A)  The ALJ did not resolve a potential conflict in the vocational evidence.**

During the administrative process, Plaintiff completed paperwork and provided statements describing her past relevant work.[2] She described several jobs including, of note, the job of nylon operator for a carpet manufacturer—a job Plaintiff performed full-time for eight years.[3] (AR. at 342.) She explained the work involved putting nylon rolls into a machine and "[rewinding] them into another [roll] making sure they did not break." (AR. at 346.) According to Plaintiff, the job required going back-and-forth to a

---

[2] The pertinent regulation defines "past relevant work" as work the claimant has performed within the past 15 years to the level of "substantial gainful activity" and for such a duration that the claimant was able to learn the job. 20 C.F.R. § 404.1560(b)(1).

[3] In another form, Plaintiff described the job as "cable operator" in a carpet warehouse. (AR. at 334-35.)

warehouse carting rolls of nylon weighing 25 pounds each and loading them onto a machine with 60 spindles. (AR. at 346.) She described the job as involving lifting weights of 25 to 50 pounds or more, and standing, walking, kneeling, crouching, handling, stooping, and reaching for 11 hours every day.[4] (AR. at 346.)

At the hearing, the VE identified the following jobs as constituting Plaintiff's past relevant work: hand packager, DOT code 920.587-018; welding assembler, DOT code 819.381-010; and plastic and synthetic roll processor, DOT code 559.685-018.[5] (AR. at 65.) The ALJ then asked the VE whether an individual limited to light work with only occasional overhead reaching with her right arm[6]; occasional operation of foot controls; no working around unprotected heights; no crawling, or climbing ladders, ropes, or scaffolds; and the ability to perform all other postural maneuvers occasionally could perform Plaintiff's past relevant work. (AR. at 66.) The VE testified a hypothetical individual could perform the plastic and synthetic roll processor and hand packager jobs with those limitations. (AR. at 66.) After discussion with Plaintiff's counsel, however, it appeared Plaintiff had not performed the hand packager job to substantial gainful activity levels or for a sufficient duration. (AR. at 67-68.) The VE testified her opinion was consistent with the requirements of the DOT. (AR. at 67.)

In the decision, the ALJ adopted the VE's testimony from the hearing and concluded that, with the RFC given, Plaintiff could perform her past relevant work as a plastic and synthetic roll processor as it is generally performed in the national economy. (AR. at 29-30.) Regarding Plaintiff's limitation to occasional overhead reaching with her right arm, the ALJ explained,

> [T]he DOT does not specifically address overhead reaching and discusses

---

[4] Plaintiff described her schedule as working 12 hours per day for four days per week. (AR. at 335.)

[5] The plastic and synthetic roll processor corresponds to the nylon or cable operator job Plaintiff performed for the carpet manufacturer, which Plaintiff performed from 2004 to 2012. (AR. at 66-68.)

[6] The Court notes there may have been some misunderstanding between the ALJ and testifying medical expert regarding which of Plaintiff's upper extremities required limitations. (AR. at 60, 62, 65.)

reaching in general and more specifically without reference to reaching with only one upper extremity. However, the undersigned accepts the vocational expert's testimony. The vocational expert's knowledge based on education and experience supplements the information in the DOT but is not inconsistent with the DOT since this topic is not addressed by the DOT.

(AR. at 30.) The ALJ did not make alternative findings at step five. (AR. at 29-30.)

Plaintiff argues the DOT code 559.685-018, which the VE testified corresponded to the job of plastic and synthetic roll processor, actually corresponds to the job of ampoule filler—a job Plaintiff did not perform—and that the job Plaintiff actually performed is most comparable to that of roll operator, DOT code 554.682-018, which is listed in the DOT as medium work and is thus precluded by Plaintiff's light RFC. (Pl. Br. at 4-6.) Alternatively, Plaintiff argues that the ampoule filler job and the job Defendant asserts is correct each require frequent reaching, which conflicts with Plaintiff's limitation to only occasional overhead reaching with her right arm, and that the ALJ failed to identify and resolve this conflict in violation of Social Security Ruling ("SSR") 00-4p. (Pl. Br. at 7-10, Reply at 2-6.)

Defendant responds, in part, that the VE mistakenly cited the incorrect DOT code, which was off by one digit from the code corresponding to Plaintiff's job, and that this discrepancy constitutes a harmless scrivener's error. (Def. Br. at 15-17.) Defendant argues the VE and ALJ appropriately defined Plaintiff's past relevant work under the DOT, and that there is no conflict in the vocational evidence because not every job requiring frequent reaching also requires frequent overhead reaching. (Def. Br. at 17-21.)

At step four, the claimant has the burden of proving she can no longer perform her own past relevant work in the manner she performed it or as it is generally performed in the national economy. *E.g.*, *Pinto v. Massanari*, 249 F.3d 840, 844-45 (9th Cir. 2001); *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986) ("The claimant has the burden of proving an inability to return to his former type of work and not just to his former job.") The ALJ's concurrent duty at this step is to make factual findings by comparing the

limitations imposed by the claimant's RFC to the physical and mental demands of a particular job and to reach a conclusion as to whether the claimant can perform that job. *Pinto*, 249 F.3d at 844-45 (citations omitted). To ascertain the physical and mental demands of a job as it is generally performed in the economy, an ALJ may consult the DOT.[7] 20 C.F.R. § 404.1560(b)(2); SSR 00-4p, 2000 WL 1898704 at *2 (S.S.A. Dec. 4, 2000) ("In making disability determinations, we rely primarily on the DOT . . . for information about the requirements of work in the national economy.") While the SSA primarily relies on the DOT for "information about the requirements of work in the national economy[,]" [t]he [SSA] also uses testimony from vocational experts to obtain occupational evidence." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007) (citations omitted). VE testimony "generally should be consistent" with the DOT, but neither source "automatically trumps when there is a conflict." *Id.* (quotations and citations omitted). As such, before relying upon VE testimony, "the ALJ must first determine whether a conflict exists. If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]." *Id.* (citations omitted).

Plaintiff is correct that DOT code 559.685-018 actually corresponds to the job of ampoule filler, and that Plaintiff never performed this job.[8] *DOT*, 559.685-018 Ampoule Filler, *available at* 1991 WL 683728. On the other hand, Defendant is correct the applicable DOT code appears to be 557.685-018—which is only one digit off from the code the VE identified—and which also corresponds to the job title of "Processor" grouped under the occupational division "Processing of Chemicals, Plastics, Synthetics, Rubber, Paint, and Related Products." *DOT*, 557.685-018 Processor, *available at* 1991 WL 683521. This Court finds the discrepancy between the two codes is harmless. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (the Court is permitted to draw

---

[7] "The DOT is 'the best source for how a job is generally performed.'" *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008) (quoting *Pinto*, 249 F.3d at 845).

[8] Defendant does not contest this. (Def. Br. at 15-18.)

- 6 -

reasonable inferences); *Patterson v. Saul*, 812 Fed. App'x 506, 507 n.4 (9th Cir. 2020) (unpublished) ("We agree with the district court that the ALJ's misidentification of Patterson's position [by one digit] was a harmless 'scrivener's error.'").

Plaintiff argues that to accept this rationale would be to "rewrite the ALJ's decision" in reliance on post-hoc rationalizations (Reply at 2); this Court disagrees. The plastic and synthetic roll processor job the VE identified and the ALJ accepted shares the title of "processor," the same exertional level, and the same skill level as the job Defendant identifies in the DOT; the jobs are performed in the same industry; and the codes are distinct by only one digit. *Compare* AR. at 65 *with DOT*, 557.685-018 Processor, *available at* 1991 WL 683521. This Court can reasonably infer the VE intended to identify the processor job corresponding to DOT code 557.685-018.[9] (*See* AR. at 65.)

The Court further finds there is insufficient information in the record to rule-out the existence of a conflict in the vocational evidence.[10] "For a difference between an expert's testimony and the [DOT's] listings to be fairly characterized as a conflict, it must be obvious or apparent. This means that the testimony must be at odds with the [DOT's]

---

[9] Plaintiff urges the Court to accept that her past work in the carpet warehouse is most aptly characterized as a roll operator, DOT code 554.682-018, which is precluded by her light RFC. (Pl. Br. at 6.) Plaintiff notes, for instance, that the lifting and carrying requirements she described in her Work History Report are more consistent with medium work and the roll operator position. (AR. at 346.) But this discrepancy does not rule-out the synthetics processor job as there can be meaningful differences between the job as the Plaintiff performed it and the job as it is generally performed. SSR 82-61, 1982 WL 31387, at *2 (S.S.A. 1982) ("There may be cases involving significant variations between a claimant's description [of her past work] and the description shown in the DOT.") While "[i]t is error for the ALJ to classify an occupation 'according to the least demanding function[,]'" *Carmickle*, 533 F.3d at 1166 (quoting *Valencia v. Heckler*, 751 F.2d 1082, 1086 (9th Cir.1985)), substantial evidence nevertheless supports the VE's (and, by extension, the ALJ's) classification of the job here. *Thomas*, 278 F.3d at 954 (the ALJ's conclusion should be upheld "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision . . . .") Nevertheless, as the Court has concluded there is a potential conflict in the vocational evidence which needs to be resolved, Plaintiff is free to dispute the proper classification of her past relevant work upon remand.

[10] Defendant asserts Plaintiff waived her argument regarding a vocational conflict. (Def. Br. at 20-21.) The ALJ is required to identify and reconcile conflicts in the vocational evidence regardless of whether Plaintiff raised the issue at the administrative level. *E.g.*, *Lamear v. Berryhill*, 865 F.3d 1201, 1206-07 (9th Cir. 2017) Consequently, the Court will proceed with the conflict analysis.

listing of job requirements that are essential, integral, or expected." *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016). The Court must decide, based upon the evidence of record, the DOT description, and "common experience," whether it is "likely and foreseeable" an individual could do the job despite the conflicting limitation. *Lamear*, 865 F.3d at 1205-06. Importantly, however, "the more obscure the job, the less likely common experience will dictate the result. To avoid unnecessary appeals, an ALJ should ordinarily ask the VE to explain in some detail why there is no conflict between the DOT and the applicant's RFC." *Id*. at 1205.

The issue here is whether Plaintiff's limitation to occasional overhead reaching with her right arm conflicts with the requirement of frequent reaching in the DOT's description of the processor job. *DOT*, 557.685-018 Processor, *available at* 1991 WL 683521. Plaintiff argues a remand is warranted because, due to the obscure nature of the job, common experience is less likely to inform whether a conflict exists.[11] (Reply at 3-4.) This Court is inclined to agree.

"While reaching connotes the ability to extend one's hands and arms in any direction, not every job that involves reaching requires the ability to reach overhead." *Gutierrez*, 844 F.3d at 808 (cleaned up). The court must look to the DOT description of the jobs at issue to determine whether it is "likely and foreseeable" the thing a claimant is precluded from doing is an "essential, integral, or expected" part of the job. *See Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017) (summarizing the job tasks in the DOT descriptions to ascertain the essential duties of the jobs); *Gutierrez*, 844 F.3d at 808. Here, most of the work tasks described in the DOT's processor job entry appear to be related to monitoring and operating a fiber filament extruding machine. *See DOT*,

---

[11] In her Opening Brief, Plaintiff argued the job of ampoule filler requires frequent reaching under the DOT, and this requirement is inconsistent with her limitation to occasional overhead reaching with her right upper extremity. (Pl. Br. at 7-8.) The synthetics processor job the Defendant noted in the Answering Brief also requires frequent reaching. *DOT*, 557.685-018 Processor, *available at* 1991 WL 683521. In her Reply, Plaintiff argued the frequent reaching required in the synthetics processor job also conflicts with her limitation to occasional overhead reaching. (Reply at 3.) Having found the ALJ's identification of the ampoule filler job to be a harmless scrivener's error, the Court looks to the DOT requirements of the synthetics processor job corresponding to DOT code 557.685-018.

- 8 -

557.685-018 Processor, *available at* 1991 WL 683521. The essential tasks include threading the filaments through guides and rollers; applying various solutions to the filaments; repairing broken filaments; setting temperature controls; and removing bobbins of yarn from the machine. *Id*. Frequent reaching is required. *Id*. Common experience does not inform how a synthetic filament extruding machine works, how it is operated, or how it is ergonomically situated, and the DOT provides no guidance. *See Id*. One may be required to reach overhead to thread the filaments through guides or rollers, remove the bobbins from the machine, or even adjust the controls. *DOT*, 557.685-018 Processor, *available at* 1991 WL 683521. This may even require two hands on a frequent basis. This Court "cannot determine from this record, the DOT, or [ ]common experience whether the job[] in question require[s]" frequent overhead reaching with the right arm or both arms, so the Court "cannot say the ALJ's failure to [to seek an explanation and resolve the issue] was harmless." *Lamear*, 865 F.3d at 1206. Given the circumstances and the arcane nature of the job, the Court finds it was incumbent upon the ALJ to "ask the VE to explain in some detail why there is no conflict between the DOT and the applicant's RFC." *Id*. at 1205. While the VE testified her opinion was consistent with the DOT, "[t]he ALJ is not absolved of this duty [to reconcile conflicts] merely because the VE responds 'yes' when asked if her testimony is consistent with the DOT." *Id*. at 1205 n. 3 (quoting *Moore v. Colvin*, 769 F.3d 987, 990 (8th Cir. 2014)). The ALJ's failure to inquire further has left "an unresolved potential inconsistency in the evidence that should have been resolved." *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006) (citations omitted). While the ALJ seemed to identify and attempt to resolve the potential vocational conflict in the unfavorable decision (AR. at 30), an ALJ is required to not only make the inquiry at the hearing, but also obtain a reasonable explanation from the VE for any deviation. *Massachi*, 486 F.3d at 1152-53 (citations omitted). The ALJ did not do so here.

"[I]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded for further proceedings." *Revels v.*

*Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017) (quotations and citations omitted). Such is the case here. For the reasons stated above, the Court finds that the discrepancy in DOT codes was a harmless error, but that there is a potential conflict in the vocational evidence that needs to be resolved. Consequently, this Court remands for further proceedings.

**(B)     Plaintiff having alleged no particular injury plausibly connected to the Act's unconstitutional removal provision, the Court declines to remand on this basis.**

In *Seila Law v. CFPB*, the Supreme Court held that the structure of the Consumer Financial Protection Bureau, as established under the Dodd-Frank Act, violated separation-of-powers doctrine under Article II by limiting the circumstances under which the President could remove the agency's director. 140 S. Ct. 2183, 2197 (2020). Plaintiff argues the "constitutionally invalid structure of the CFPB is identical to that of the [SSA.]" (Pl. Br. at 10.) Consequently, Plaintiff argues, SSA's structure is unconstitutional, the Commissioner had no authority to promulgate rules or delegate authority to ALJs and Appeals Council Officers, and Plaintiff was thus deprived of a "valid administrative adjudicatory process." (Pl. Br. at 11.)

In *Kaufmann v. Kijakazi*, the Ninth Circuit recently addressed this very issue and held that the removal provision under the Act was unconstitutional, but severable. 32 F.4th 843, 848-49 (9th Cir. 2022). Following the Supreme Court's holding in *Collins v. Yellen*, the Ninth Circuit found the unconstitutional removal provision did not "affect the *authority* of the underlying agency officials to act[,]" namely, the Commissioner of Social Security. *Id*. at 849 (emphasis in original) (citing 141 S. Ct. 1761, 1787-88 & n. 23 (2021)). The Court held, consistent with *Collins*, that a claimant must demonstrate how the unconstitutional removal provision caused her actual harm. *Id*. (citations omitted). Absent a showing of harm, the Court would not undo the agency decision. *Id*. at 849-50.

Here, Plaintiff argues the unconstitutional removal provision operates to strip the Commissioner of authority to act. (Pl. Br. at 11.) Her position is belied by *Collins* and *Kaufmann*. *E.g.*, *Kaufmann*, 32 F. 4th. at 849 (citations omitted). The issue then, is

whether Plaintiff has alleged a harm sufficient to necessitate remand. In her Reply—and not before—Plaintiff argues she suffered the following injuries: (1) "she did not receive a constitutionally valid hearing and adjudication from an ALJ to which she was entitled"; (2) "she did not receive a constitutionally valid decision from an ALJ to which she was entitled"; (3) "she received an unfavorable decision from this constitutionally illicit ALJ adjudication process"; (4) "she did not receive a constitutionally valid adjudication process from SSA's Appeals Council to which she was entitled"; (5) "she did not receive a constitutionally valid determination by the Appeals Council to which she was entitled"; and (6) "she received an unfavorable determination from this constitutionally illicit Appeals Council adjudication process." (Reply at 12-13.) Again, however, the unconstitutionality of the removal provision does not operate to strip the Commissioner of authority to act, which includes the authority to delegate her authority. *See*, *e.g.*, *Collins*, 141 S. Ct. at 1787-88 & n. 23. Plaintiff repeatedly contends that, because of the unconstitutional removal provision, the Commissioner had no authority to delegate. (Reply at 7, 9-10, 17-18, 21-22.) This is incorrect. *Collins*, 141 S. Ct. 1761, 1788 n. 23 ("Settled precedent also confirms that the unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office . . . .") (citing *Seila Law*, 140 S. Ct. at 2207-11). If Plaintiff does not challenge the officials were validly appointed—and Plaintiff does not—the unconstitutional removal provision did not impact the Commissioner's authority. *Id.* Plaintiff needed to show how the unconstitutional removal provision personally and adversely affected her claim. *Kaufmann*, 32 F. 4th. at 849-50. The unconstitutional removal provision does not necessitate remand on its own.[12] *Id.*

Elsewhere in her Reply, Plaintiff also cited the President's statement regarding

---

[12] It is also important to note that Plaintiff's challenge does not implicate the Appointments Clause. (Reply at 17.) ("This appeal is not an Appointments Clause challenge as was true in the cases which led to the Supreme Court's decision in *Carr v. Saul*.") The distinction is important because, if the relevant official was not properly appointed under the Appointments Clause, she had no authority to act. *Collins*, 141 S. Ct. at 1787; *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018)

former Commissioner Saul's removal, including that former Commissioner Saul "reduced due process protections for benefits appeals hearings" (Reply at 24-25), but Plaintiff has not cited an alleged due process violation that could have plausibly affected the outcome of her claims. (Reply at 24-25.) Plaintiff asserts that "it is unmistakable that President Biden would have fired Commissioner Saul immediately upon taking office had he believed it was legal."[13] (Reply at 25.) But Plaintiff can only speculate that the outcome of her disability claims would have been different had the President enjoyed unfettered removal power and removed former Commissioner Saul immediately upon the President's inauguration. Plaintiff has produced no evidence that had former Commissioner Saul been promptly removed, Plaintiff's claims may have been awarded or decided differently. *Kaufmann*, 32 F.4th at 850 (rejecting an argument that "rests solely on speculation that the Commissioner theoretically might have acted differently.") As such, these reasons are also insufficient.[14] *See Ramos v. Comm'r of Soc. Sec.*, No. 1:20-CV-01606-EPG, 2022 WL 105108, at *4 (E.D. Cal. Jan. 11, 2022) (finding the same arguments unavailing).

The Court finds Plaintiff has not established a particular harm which would necessitate a remand.[15] Because the Court finds no constitutional defect necessitating

---

[13] Plaintiff is presumably referring to the Supreme Court's hypothetical explanation of the appropriate remedy in *Collins*. The Court in *Collins* explained, "Suppose, for example, that the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal. Or suppose that the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way. In those situations, the statutory provision would clearly cause harm." *Collins*, 141 S. Ct. at 1789.

[14] The Commissioner's involvement in Plaintiff's disability claim—hypothetical and tenuous though it may be—is far more abstract than the confirmed Directors' actions in *Collins*. Indeed, here, as Plaintiff herself contends, the extent of the Commissioner's involvement was her delegation of authority to the ALJ who denied Plaintiff's claim and the Appeals Council officers which affirmed that denial. (Pl. Br. at 10, Reply at 20-21.) As Justice Kagan noted in her *Collins* concurrence, "The SSA has a single head with for-cause removal protection; so a betting person might wager that the agency's removal provision is next on the chopping block. But given the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone. That makes sense." *Collins*, 141 S. Ct. at 1802 (Kagan, J., concurring in part).

[15] The Court also rejects Plaintiff's position that Defendant conceded the constitutional

- 12 -

remand, it need not address Defendant's alternative bases to affirm the ALJ decision, including the Harmless Error doctrine, the De Facto Officer doctrine, the Rule of Necessity, and others. (Def. Br. at 11-15.)

**IT IS THEREFORE ORDERED** reversing the August 5, 2020 decision of the Administrative Law Judge, (AR. at 22-38) and remanding for further proceedings consistent with this opinion.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and to close this case.

Dated this 29th day of September, 2022.

Douglas L. Rayes
United States District Judge

---

argument with respect to the actions of the Appeals Council by failing to address them. (Reply at 13-15.) Defendant acknowledged Plaintiff's constitutional argument also applied to Appeals Council officers and responded accordingly. (Def. Br. at 8.) Defendant's constitutional argument applies with equal force to the actions of the Appeals Council because, as Plaintiff herself argued, both ALJs and Appeals Council officers derive their authority from the Commissioner. (Pl. Br. at 11.) ("The ALJ's delegation of authority in this case came from Mr. Saul and is therefore constitutionally defective. Similarly, the ALJ decided this case under regulations promulgated by Mr. Saul when Mr. Saul had no constitutional authority to issue those rules. All of this is just as true with respect to SSA's Appeals Council judges.") (citations omitted).